IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CASSANDRA VILLARREAL § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 5:22-CV-394 |
| § | |
| CIRCLE K STORES INC, § | |
| § | |
| Defendant. § | |
| § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

For her Original Complaint against Defendant Circle K Stores Inc, Plaintiff Cassandra Villarreal shows the following:

### Introduction

1. This is an action for sexual harassment under Title VII of the Civil Rights Act of 1964. Plaintiff Cassandra Villarreal was an employee of Circle K Stores Inc in San Antonio, Texas. She suffered repeated sexual harassment at the hands of a co-worker who had sexually harassed other female employees in the past. Plaintiff reported the sexual harassment to Defendant's management on multiple occasions, but Defendant failed to take prompt and effective remedial action. Plaintiff further contends that she was constructively discharged from employment. Plaintiff now brings this action for damages and injunctive relief.

### Parties

2. Plaintiff Cassandra Villarreal is an individual residing in San Antonio, Texas. She may be served with papers in this case through the undersigned counsel.

3. Defendant Circle K Stores Inc is a limited liability company organized under the laws of the State of Texas. Its principal place of business is located at 1130 W Warner Rd Bldg B Tempe, AZ 85284-2816. It may be served with process through its registered agent, Corporation Service Company dba CSC - Lawyers Incorporating Service Company.

## Jurisdiction and Venue

4. The Court possesses personal jurisdiction over Defendant because Defendant continuously conducts business in Texas and maintains permanent offices in Texas. The Court possesses subject-matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because Plaintiff brings her claims under a federal statute, Title VII of the Civil Rights Act of 1964. Venue is proper in the Western District because all of the events giving rise to Plaintiff's claims occurred in the Western District.

## Statement of Facts

5. Plaintiff Cassandra Villarreal commenced employment with Defendant's predecessor in interest at Store #2741054 in September of 2014. At the time, it was a Corner Store that Defendant would acquire in October 2018. The store is located at 5602 UTSA Boulevard, San Antonio, Texas 78249.

6. Jatin Bhagat commenced employment with Defendant in or around 2018. Mr. Bhagat would, on a regular basis, make inappropriate and sexual comments to Plaintiff after he found out she is married to a woman. Mr. Bhagat would ask questions such as, "How do you get your pleasure then? Why aren't you with a man?" This continued regularly while Plaintiff and Mr. Bhagat worked the same shifts. On other occasions, Mr. Bhagat would say things like, "You need a man in your life." And on one particular day during a lottery audit, Mr. Bhagat approached

2

Plaintiff and said, "Let me be frank with you. You need to have a man because you don't know pleasure."

7. Plaintiff reported this conduct to her manager, Dulce Arredondo. However, Ms. Arredondo shrugged off these reports. She would say, "Oh, he's just a pervert." Ms. Arredondo did not appear to show any real concern.

8. Matters came to a head in August 2019. One day while working the same shift with Plaintiff, Mr. Bhagat confided to Plaintiff that he was cheating on his wife with his neighbor. He then started talking about the sex he was having with his neighbor. Plaintiff left Mr. Bhagat's area so he could not continue. On a separate occasion on or about August 13, Mr. Bhagat requested Plaintiff to send him inappropriate videos of girls. Again, Plaintiff refused and left the area.

9. On or around August 14, 2019, during a propane exchange at work, Mr. Bhagat told Plaintiff, "Me and my neighbor, we go into the car wash and we have sex." Shortly after, Mr. Bhagat grabbed Plaintiff's arm. Plaintiff immediately pulled away. Upon information and belief, Defendant has video footage of this incident. When Plaintiff pulled away, Mr. Bhagat said, "I won't put my penis in you, I'll put my tongue." Plaintiff immediately reported this incident. Ms. Arredondo advised Plaintiff to make a statement. Later that same day, Mr. Bhagat continually called Plaintiff over to his area. Plaintiff repeatedly asked to be left alone.

10. On or around August 15, 2019, Plaintiff was obliged to work with Mr. Bhagat for the entirety of her day despite the fact that it was an unsafe environment. Plaintiff complained to Ms. Arredondo about having to work with Mr. Bhagat. At approximately 10:15 am that same day, Mr. Bhagat grabbed Plaintiff and tried to hug her. Plaintiff quickly elbowed him to keep away. He said, "I'm sorry, darling. I'm not that kind of man."

11. Later that same day, he approached Plaintiff again and asked him to go away. As soon as he disappeared from the vicinity, Plaintiff complained to Ms. Arredondo again. Plaintiff stayed near Ms. Arredondo for the remainder of the shift. Mr. Bhagat was later suspended. Upon information and belief, Mr. Bhagat provided a written statement in which he confessed to having made inappropriate sexual remarks to Plaintiff.

12. A few days later, on or about August 19, Mr. Bhagat and his son came into the store (during Plaintiff's shift) to confront Ms. Arredondo about the suspension. Mr. Bhagat's son was very upset. He told Ms. Arredondo that his father "doesn't understand some things" and that he "shouldn't be punished for being like that." Ultimately, Mr. Bhagat's son told Ms. Arredondo that he was going to take the matter to corporate.

13. On or about August 21, "Mary Jean" from human resources came to the store. She interviewed Plaintiff regarding her complaint. Mary Jean disclosed during the interview that she had viewed the video footage of Mr. Bhagat grabbing Plaintiff. Mary Jean told Plaintiff that Mr. Bhagat did admit to grabbing her, but he claimed was just "being friendly" since he was not aware that "hugging" was frowned upon in America. Mr. Bhagat is not originally from the USA.

14. When Mary Jean asked what should be done about this situation, Plaintiff stated that Mr. Bhagat should be fired. Mary Jean asked Plaintiff if Mr. Bhagat had any problems with any other employees. Plaintiff disclosed two other employees who had been harassed in some way by Mr. Bhagat—Leanna (Lee), who had been sexually harassed in a physical way (Mr. Bhagat had attempted to lift her shirt and asked to see her breasts during her first week of employment, which she reported to a manager), and Marcela, who had been the subject of some insensitive comments regarding her weight.

15. Mary Jean disclosed to Plaintiff that there were four other women who had complained about Mr. Bhagat. After Mary Jean completed her interviews, Ms. Arredondo told Plaintiff that Mr. Bhagat would likely be fired and was hoping the outcome of the interviews would be his termination so that Plaintiff could return to a safe workplace environment.

16. On or about August 22 or 23, Defendant brought Mr. Bhagat and his son to the store for an interview. While Plaintiff was working her shift, Mr. Bhagat walked towards her and stood next to her so he could talk to Ms. Arredondo. Plaintiff did not feel comfortable standing next to him. Plaintiff got sick on August 25 with a sore throat and a fever, and Ms. Arredondo advised her to rest.

17. On August 27, out of desperation and not having heard back from management regarding what they were going to do with Mr. Bhagat, Plaintiff submitted her resignation via email to Market Manager Jesse Blankenship as well as to Ms. Arredondo. Plaintiff felt she could no longer work at the store. Mr. Bhagat had not been fired, and Plaintiff expressed to Defendant that she felt unsafe for being forced to work with him.

18. After Plaintiff submitted her resignation, she received a text message from Blankenship. He offered Plaintiff the opportunity to transfer to a different store. Plaintiff felt this was a totally unfair solution. Instead of firing Mr. Bhagat for his inappropriate behavior, Plaintiff was asked to transfer to a different store. This was a significant inconvenience as well as a nuisance given that Mr. Bhagat was going to be allowed to continue to work at the same store.

19. On the same day, Ms. Arredondo texted Plaintiff stating she did not want to lose her and asked to reconsider her resignation. Based on Ms. Arredondo's text, Plaintiff decided to give Defendant an opportunity to make it right. On August 29, Plaintiff was ready to return to work and call her manager to rescind resignation. However, in the interim, she received phone

calls and picture messages of the schedule from co-workers warning that Mr. Bhagat was working a full shift and that Plaintiff had been taken off the schedule. That same day Plaintiff also learned that Mr. Bhagat was back on the schedule. Plaintiff advised Ms. Arredondo (by text) that she was planning to return to work, however, with Mr. Bhagat still working for Defendant, she declined and was not returning to work. Plaintiff also informed Ms. Arredondo that she would file a police report against Mr. Bhagat for touching her around August 14. Ms. Arredondo responded by thanking Plaintiff for her service and stated she had no involvement in the decision to bring Mr. Bhagat back to work.

20. On August 30, Plaintiff and co-worker Leanna made a police report complaining of Mr. Bhagat's inappropriate conduct.

21. Around September 5, Plaintiff returned a voicemail from Mary Jean, who stated that based on the facts and the video evidence, they could not terminate Mr. Bhagat. She then asked Plaintiff if she was going to transfer to a different store. Plaintiff was unwilling to return under the circumstances, as they had not taken the complaint (or the complaints of other female employees) seriously and that their resolution to transfer to a different store location was significantly inconvenient and unfair instead of firing a serial harasser. Plaintiff was constructively discharged.

## Administrative Prerequisites Exhausted

22. Plaintiff timely filed a charge of retaliation with the EEOC on November 19, 2019. On March 17, 2022, EEOC issued a Right to Sue letter at Plaintiff's request. Plaintiff now files this lawsuit within 90 days of her receipt of the Right to Sue.

**Cause of Action: Sexual Harassment in Violation of Title VII**

23. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 22 supra.

24. Defendant is an employer within the meaning of Title VII in that Defendant has employed more than 15 employees in 20 or more calendar weeks in both 2018 and 2019. Plaintiff has, at all times relevant to this lawsuit, been a W-2 employee of Defendant.

25. Plaintiff was repeatedly subjected to sexual harassment at the hands of a co-worker. This harassment was both severe and pervasive, and affected the terms and conditions of Plaintiff's employment. This pattern of sexually-harassing behavior occurred over an extended period of time and continued up until very shortly before Plaintiff's separation from employment.

26. In conformity with Defendant's anti-harassment policy, Plaintiff repeatedly complained to management about this sexual harassment, but Defendant failed to take prompt and effect remedial action. Upon information and belief, the co-worker in question had sexually harassed other employees prior to Plaintiff, and Defendant was aware of this but did nothing to stop the behavior and protect the victims.

27. Plaintiff further pleads that she was constructively discharged from employment based on the intensity of the harassment inflicted upon her, Defendant's failure to take prompt and effective remedial action, and Defendant's decision to reinstate the harasser to work with Plaintiff. Indeed, Defendant's solution to the problem—to propose that Plaintiff, and not the harasser, was totally inequitable and unacceptable, and served to punish the Plaintiff, not the harasser.

28. As a result of Defendant's unlawful actions and inactions, Plaintiff has suffered lost wages and benefits, emotional distress and mental anguish, humiliation, embarrassment, damage to her reputation, and loss of enjoyment of life. Because the evidence also establishes that Defendant acted with malice, or at least with reckless indifference towards Plaintiff's federally-

protected rights, Plaintiff is also entitled to an award of punitive damages. Finally, because Plaintiff has been forced to retain legal counsel to vindicate her legal rights, Plaintiff also is entitled to an award of attorney fees, litigation expenses, and costs of court.

## Jury Demand

21. Plaintiff demands a trial by jury.

## Conclusion and Prayer

22. Plaintiff prays that, upon by final judgment, she be awarded the following:

    a. Lost wages and benefits;

    b. Reinstatement or front pay;

    c. Compensatory damages for emotional distress, mental anguish embarrassment, damage to reputation, and loss of enjoyment of life;

    d. Punitive damages;

    e. Attorney fees and litigation expenses;

    f. Costs of court; and

    g. All other relief to which she is entitled.

8

Respectfully submitted,

/s/Michael V. Galo, Jr.
Michael V. Galo, Jr.
State Bar No. 00790734
Federal Bar No. 19048
GALO LAW FIRM, P.C.
4230 Gardendale, Bldg 401
San Antonio, Texas 78229
Telephone: 210.616.9800
Facsimile: 210.616.9898
Email: mgalo@galolaw.com
ATTORNEY FOR PLAINTIFF
CASSANDRA VILLARREAL